NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-1302

———————

MARK MCKAY,

Appellant

v.

TED KRIMMEL; BRIAN HESSENTHALER; CHRISTOPHER GRAYO;
JOSEPH GANSKY

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:18-cv-2112)
District Judge: Honorable Gene E. K. Pratter

———————

Argued on June 8, 2023

Before: HARDIMAN, FUENTES, AMBRO, Circuit Judges

(Opinion Filed: June 28, 2023)

Caroline Anapol **[Argued]**
Steven Jessen-Howard
Taylor Kauffman
Mary E. Levy
Crystal Zook
Temple University
Beasley School of Law
1719 N. Broad Street
Philadelphia, PA  19122

Jessica Rickabaugh
Tucker Law Group
1801 Market Street
Ten Penn Center, Suite 2500
Philadelphia, PA 19103

        Counsel for Appellant

Paola T. Kaczynski **[Argued]**
William J. Ferren & Associates
P.O. Box 2903
Hartford, CT 06104

        Counsel for Appellees Christopher Grayo and Joseph Gansky

---

OPINION[*]

---

AMBRO, <u>Circuit Judge</u>

Plaintiff Mark McKay appeals the District Court's grant of summary judgment in favor of the Defendant-Appellees, Officers Christopher Grayo and Joseph Gansky. Because McKay has sufficiently demonstrated these officers' participation in his arrest, we vacate the Court's excessive-force ruling and remand the case for further proceedings consistent with this opinion.

## I.      Background

Bensalem Township police arrested McKay during a search of his property for evidence related to his distribution of methamphetamine. During his arrest, police "threw

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

[him] to the ground, placed him in handcuffs at gun point, and brought him to his feet" in his front yard. JA 35. One officer then searched within his underwear for contraband.

McKay, proceeding pro se, sued two of his arresting officers—Grayo and Gansky—under 42 U.S.C. § 1983, asserting claims under the Eighth Amendment and Pennsylvania tort law.[1] The District Court later construed the Eighth Amendment claims as unlawful search, false arrest, and excessive-force claims arising under the Fourth Amendment. After briefing on a motion to dismiss, the District Court allowed the excessive-force claim and the unreasonable-search claim to proceed to discovery.[2]

In discovery, McKay gave deposition testimony that Grayo and Gansky had led the small group of officers who arrested him. *See* JA 55 ("Grayo and Gansky pretty much led the way with everything."); *see also* JA 47 (detailing the arrest). He described the subsequent search of his person, explaining that an officer "went in" his boxers and "searched around [his] testicles." JA 47. But he did not identify the officer and offered only a physical description. *See* JA 55 ("[H]e was tall, slim and I believe balding."). Separate from his deposition testimony, McKay submitted interrogatories to Grayo and Gansky that yielded little useful information.

---

[1] McKay also sued several other defendants, all of whom were dismissed later from the suit and are not the subject of this appeal.

[2] Though the District Court stated at the motion-to-dismiss stage that only McKay's excessive-force claim survived, JA 72, the Court described that claim as including the allegation that Grayo and Gansky "inappropriately touched [McKay's] 'private area' while conducting an unauthorized 'intrusive' body cavity search," JA 70. The Court then explained at summary judgment that it had "not explicitly address[ed] whether Mr. McKay's allegations related to the intrusive search of his person also survived the officers' motion to dismiss," and proceeded to evaluate separately and reject that claim. App. 4.

After the close of discovery, Grayo and Gansky successfully moved for summary judgment on both remaining claims. First, the Court disposed of McKay's excessive-force claim because he "failed to specify the personal involvement of both Officer Gansky and Officer Grayo" in the arrest. JA 6 (Op. at 4); *see also* JA 7 (Op. at 5) ("Mr. McKay does not identify which officer is the one who allegedly threw him to the ground, which is the basis of his excessive force claim."). Second, it rejected McKay's unreasonable-search claim because no "strip search" had occurred, JA 8–10 (Op. at 6–8), and because it was *Heck*-barred, JA 10 (Op. at 8) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)).

McKay filed a timely notice of appeal.[3]

## II.    Discussion

### A.    The Excessive-Force Claim

Police officers may "not be held liable under section 1983 merely because they were members of a group of which some other members were guilty of abuses." *Anela v. City of Wildwood*, 790 F.2d 1063, 1067–68 (3d Cir. 1986). "A plaintiff alleging that one or more officers engaged in unconstitutional conduct must establish the personal involvement

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). Summary judgment is proper when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]ll facts should be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor." *Jutrowski*, 904 F.3d at 288 (cleaned up). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

of each named defendant to survive summary judgment and take that defendant to trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018) (cleaned up).

The record indicates that both Grayo and Gansky were not only involved, but direct participants, in the arrest underlying McKay's claim of excessive force. *See, e.g.*, JA 35 (verified complaint[4]) ("Mr. Grayo *and* Mr. Gansky threw Mr. McKay to the ground, placed him in handcuffs at gun point, and brought him to his feet.") (emphasis added); JA 97 (affidavit of Mark McKay, Jr.) ("I had seen two police officers [later known to me as Officers Grayo and Gansky] [sic] picking my father up off the ground in handcuffs."); *see also* JA 47 (deposition testimony) (attributing the takedown and arrest to "about six cops," including Grayo and Gansky). What remains, then, is a "classic factual dispute to be resolved by the fact finder" about the extent of each officer's participation. *Jutrowski*, 904 F.3d at 291 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). Hence, we vacate summary judgment for the officers on this claim.

## B.    The Unreasonable-Search Claim

McKay's verified complaint and deposition testimony make clear that only one officer searched inside his boxers incident to his arrest. *See, e.g.*, JA 35 (verified complaint) ("Mr. Grayo *or* Mr. Gansky . . . unlawfully entered Mr. McKay's underwear and searched around his testicles.") (emphasis added); JA 48 (deposition testimony) ("One

---

[4] A verified complaint may be treated as an affidavit with evidentiary value at the summary-judgment stage. *See Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 100 n.1 (3d Cir. 2017); Fed. R. Civ. P. 56(c)(4). However, it cannot create a genuine dispute of material fact if contradicted by "the story told by discovery." *Boykins v. SEPTA*, 722 F. App'x 148, 159 n.11 (3d Cir. 2018).

[officer] grabbed my phone and the other one went in [my boxers].”). Though McKay offers a generic physical description of that officer, he never identifies either defendant. *See, e.g.*, JA 55 (deposition testimony) (“Q: [I]s there any way that you can describe which officer was the one that did that, that went into your boxers? . . . [McKay]: I just know he was the tall and slim [sic], *whether it be Grayo or Gansky*, and he was tall, slim and I believe balding.”) (emphasis added). Thus, the record is insufficient to establish Grayo or Gansky's personal participation in the alleged unreasonable search.

McKay's argument that Grayo and Gansky can be held jointly and severally liable for the unreasonable search fails for the same reason. Joint and several liability is “a theory of recovery” requiring a plaintiff to establish that “each defendant acted in concert to produce a single, indivisible injury.” *Harper v. Albert*, 400 F.3d 1052, 1061–62 (7th Cir. 2005) (cleaned up). Here, McKay alleged that *either* Grayo *or* Gansky searched inside his underwear, not that they acted together in violating his Fourth Amendment rights. Summary judgment on this claim was thus proper.[5]

---

[5] Though the District Court did not analyze Grayo and Gansky's personal involvement in the unreasonable search and instead dismissed that claim because it found the search was not a “strip search,” JA 9, “we may affirm on any ground supported by the record.” *TD Bank N.A. v. Hill*, 928 F.3d 259, 276 n.9 (3d Cir. 2019). And because of McKay's insufficient identification, we need not analyze (1) the questionable legal significance of the “strip search” label employed by the District Court or (2) the applicability of *Heck v. Humphry*'s favorable-termination rule, which comes into play only when a claim implicates an underlying criminal conviction's validity, 512 U.S. at 486–87.

\* \* \*

While we affirm the District Court's grant of summary judgment on McKay's unreasonable-search claim, we vacate its ruling on his excessive-force claim and remand the case for further proceedings consistent with this opinion.